# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KULVIR SINGH BARAPIND,**<br><br>Plaintiff<br><br>v.<br><br>**GOVERNMENT OF THE REPUBLIC OF INDIA, et al.,**<br><br>Defendants | CASE NO. 1:13-CV-0667 AWI GSA<br><br>ORDER RE: MOTION TO DISMISS<br><br>(Docs. 40 and 48) |

## I. Background

Plaintiff Kulvir Singh Barapind is a citizen of the Republic of India. Defendants are the Government of the Republic of India ("GOI"), the State Government of Punjab, and the Punjab Police. In the 1980s, Plaintiff lived in Punjab and was active with organizations that sought the independence of that Indian state. Plaintiff was charged with several crimes in connection with the activities of the independence movement, including murder. In 1993, Plaintiff traveled to the United States and sought asylum. GOI sought to have Plaintiff extradited; the United States and the GOI signed an extradition treaty on June 25, 1997. Plaintiff fought the extradition in United States courts for many years. On November 9, 2005, the Eastern District of California denied Plaintiff's habeas corpus petition and issued a Certification and Order of Extraditability with respect to three murder charges. This was a final ruling and ended the U.S. courts' involvement in Plaintiff's extradition.

The United States has signed and ratified the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("Convention"). Among other requirements, the Convention prohibits extradition in situations where a person

would be subject to torture. The Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") implements the Convention. In key part, the Secretary of the U.S. Department of State ("Department") may not extradite a person if he/she is "more likely than not" to be tortured after extradition. See 22 C.F.R. § 95.2. On November 23, 2005, Plaintiff submitted an application to the Department asking for his extradition to be halted on the basis that he would be subject to torture in India. Doc. 63-1, 9. The Department communicated with the GOI concerning Plaintiff's potential treatment in police custody in India. Through diplomatic notes in 2005 and 2006, the GOI assured the Department that Plaintiff would not be tortured ("Agreement"). The Agreement is not a contract that the GOI and the Department signed; instead, it is a series of communications that went back and forth describing what Plaintiff's treatment in Indian custody would be. The terms can only be gleaned indirectly from the diplomatic notes. The assurances satisfied the Department and Plaintiff was extradited in June 2006.

In May 2008, Plaintiff was acquitted of the three criminal charges in Indian courts and was released. Plaintiff resumed his activity with organizations seeking the independence of Punjab. On September 20, 2012, Plaintiff was arrested on new criminal charges. Plaintiff alleges that he was subjected to torture September 21-25, 2012, carried out by the local police forces. Plaintiff sought relief in the Indian courts, which issued an order on September 28, 2012 that Plaintiff was to be presented to medical authorities for examination. That order was not complied with.

On May 7, 2013, Plaintiff filed the present suit, in the Eastern District of California, against Defendants and a number of government officials who work for Defendants. Doc. 1. Plaintiff voluntarily dismissed the individual government officials. Doc. 30. Against the three remaining Defendants, Plaintiff's complaint alleges they "are liable for having violated the term & condition of Mr. Barapind's surrender and their resulting legal duty not to subject him to torture as defined by the Convention...Consequently the Government of India and the other defendants are liable to Mr. Barapind for damages resulting from the torture he has and is experiencing." Doc. 1, Complaint, 26:4-26.

Defendants filed a motion to dismiss on a number of grounds; most notably, Defendants argue a lack of subject matter jurisdiction as Defendants are entitled to sovereign immunity. Doc.

40-1. Plaintiff opposes the motion. Doc. 41. After Defendants filed a reply, Plaintiff requested leave to make additional filings to present evidence. Doc. 51. The request was granted, which allowed for a complete factual briefing on the issue of sovereign immunity. Doc. 57.

## II. Legal Standard

Fed. Rule Civ. Proc.12(b)(1) allows a motion to dismiss for lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). The plaintiff has the burden to establish that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1). A Rule 12(b)(1) jurisdictional attack may be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

This case deals with a factual challenge, which permits the court to look beyond the complaint. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Savage v. Glendale Union High School, Dist. No. 205, Maricopa County, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the

trial court from evaluating for itself the merits of jurisdictional claims." Thornhill Publishing Co. v. General Telephone Electronics, 594 F.2d 730, 733 (9th Cir. 1979).

### III. Discussion

The Foreign Sovereign Immunities Act ("FSIA") states that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607." 28 U.S.C. § 1604.  In relevant part, sovereign immunity does not apply when "the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1).  A "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).  FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989).  In this case, it is not contested that FSIA applies to all three Defendants. See Doc. 41, Plaintiff Opposition, 9:8-9.

Plaintiff argues the GOI implicitly waived sovereign immunity as part of the Agreement. Plaintiff does not claim that the extradition itself constitutes waiver, but rather the promise not to torture:

> Mr. Barapind's jurisdictional showing does not rest on the defendants' exercising their rights under the extradition treaty, but rather rests on the defendants' agreement that they would not subject him to treatment defined as torture under the Convention. Contrary to defendants' assertion, Mr. Barapind does not rest this court's jurisdiction on defendants' invoking their rights under the extradition treaty between the United States and India. Instead, Mr. Barapind rests this Court's jurisdiction on his invocation of his rights under FARRA, the Convention, and its implementing regulations that resulted in defendants voluntarily entering and agreeing to the terms of his surrender that they would not subject him to torture as defined by the Convention.

Doc. 41, Plaintiff Opposition, 18:17-25.  There are three classic situations where waiver applies: "we generally find an implied waiver in only three circumstances: (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity." Presidential Comm'n on Good Gov't v. United States Dist. Court for the Dist. of Haw., 309 F.3d 1143, 1151 (9th Cir. 2002), citing Joseph v. Office of

4

1  the Consulate General of Nigeria, 830 F.2d 1018, 1022 (9th Cir. 1987).  The case at hand does not
2  fall into any of those three paradigms.  However, the Ninth Circuit has said that for implied
3  waivers more generally, "the essential inquiry in written agreement cases is whether a sovereign
4  contemplated the involvement of United States courts in the affair in issue." Siderman de Blake v.
5  Republic of Argentina, 965 F.2d 699, 721 (9th Cir. 1992).  Thus, the determinative issue is how
6  the GOI and the Department envisioned the Agreement would be enforced.

7  With reference to that precedent, Plaintiff argues "In this case we have an assiduously
8  negotiated agreement that was consummated in order to protect Mr. Barapind's liberty interest
9  under United States domestic law, namely [Convention and FARRA] and, disputes under the
10 agreement could only conceivably be heard in the United States court, because, as the parties
11 agree, the Convention has no place in India's judicial system.  Under the precedent of the Ninth
12 Circuit, and that of its sister courts, these are the only ingredients necessary to establish an implicit
13 waiver of sovereign immunity under § 1605(a)(1)." Doc. 41, Plaintiff Opposition, 16:4-13,
14 citations omitted.  In essence, Plaintiff argues the Agreement was centered around United States
15 domestic law and implicitly specified United States courts for enforcement.  Plaintiff is wrong on
16 both of these two points: the Agreement was based upon the Convention as applied in Indian law
17 and implicitly suggests that Indian courts are the appropriate venue for relief.

18 Again, the Agreement is not one set written contract but rather a series of diplomatic notes
19 in 2005 and 2006 that described Plaintiff's forthcoming treatment in Indian custody.  The parties
20 have provided the text of some of these notes.  Of note, the representations of the GOI were
21 reproduced in internal Department memos between Washington, D.C. and the American Embassy
22 in New Delhi:

> With reference to the requested extradition of Kulbir Singh Barapind (referred to in the Indian note as Kulbir Singh Kulbeera aka Barapind) and USC obligation under the Convention Against Torture, the MEA has provided the following diplomatic note:
>
> Begin text of MEA Diplomatic Note T-413/11/2004, dated 6 February 2006:
>
>> The Ministry of External Affairs presents its compliments to the Embassy of the United States of America in New Delhi and with reference to their Note Verbale No. 06/054/Pol dated 18th January, 2006 has the honour to state that in the context of the extradition of Kulbir Singh Kulbeera @

5

> Barapind, India has signed the Convention against Torture and other Cruel, Inhuman or Degrading treatment or Punishment, 1984. As a signatory, India has good-faith obligation not to act against the objectives and purposes of the Convention.
>
> The Indian Constitution provides for the protection of life and personal liberty. It guarantees accused persons the right to be defended by a legal practitioner of his or her choice. India has legislation for the protection of human rights. The National and States Human Rights Commissions can visit prisons and can enquire on their own initiative or on a petition into any complaint of human rights violation. Indian criminal law prohibits the use of force or causing hurt to extort confession. Persons violating these provisions are subject to prosecution and imprisonment. Extracts from the Indian Penal Code of relevant sections are enclosed.
>
> Further, family members, attorneys of a person extradited to India as well as the Human Rights Commissions have access to them. Officials of the country extraditing a fugitive may also have access on a reciprocal basis.
>
> Thus Kulbir Singh Kulbeera aka Barapind on extradition to India will be dealt in accordance with the law. He will be entitled to all rights of defense, protection, and remedies available and shall not be subjected to any kind of torture.

Doc. 63-1, Feb. 9, 2006 Memo, 80-81. A short while later, the GOI reiterated its position:

> Subject: FOLLOW-UP ON BARAPIND EXTRADITION ASSURANCES
>
> ....
>
> Begin text of MEA [GOI] Diplomatic Note T-413/11/2004, dated 28 March 2006:
>
> > The Ministry of External Affairs presents its compliments to the Embassy of the United States of America in New Delhi and with reference to their Note Verbale No. 06/254/Pol dated 7th March 2006 regarding Mr. Kulbir Singh Kulbeera aka Barapind, has the honour to reiterate, as conveyed in this Ministry's note dated 6th February 2006, that Mr. Kulbir Singh Kulbeera aka Barapind on extradition to India, will be dealt with in accordance with the law. He will be entitled to all the rights of defence, protection and remedies available and shall not be subjected to torture, as defined in the Convention against Torture and other Cruel, Inhuman or Degrading treatment or Punishment, 1984.
> >
> > As we conveyed in the Note Verbale dated 6th February 2006, India as a signatory to the Torture Convention has a good faith obligation not to act against the objectives and purposes of the Convention. Indian criminal law prohibits the use of force or causing hurt to extort confession. The judicial decisions have interpreted the law to cover not only the physical hurt but the mental derangement/sufferings also. Persons violating these provisions are subject to prosecution and imprisonment.
> >
> > Once Mr. Barapind is extradited to India, the US Government will be informed about the status of the criminal trial against him for the alleged offenses in accordance with the provisions of the Indo-US Extradition Treaty. Article 21 of the Treaty provides for consultation in connection

> with the processing of individual cases and improving procedures to the implementation of the Treaty.
>
> ....
>
> We note that the GOI response does not explicitly mention coordination with Punjab authorities to ensure Barapind's humane treatment, except to reiterate in the first two paragraphs that Indian law provides for his humane treatment and that persons violating this law are subject to prosecution and imprisonment.

Doc. 63-1, March 30, 2006 Memo, 222-23. There is absolutely no hint that either the GOI or the Department conceived of the prohibition against torture being enforced through the United States court system; if anything, the suggestion is that enforcement would be carried out through the operation of Indian law in the Indian court system. The text limits further Department involvement to the provisions of the Indo-US Extradition Treaty. Again, Plaintiff disclaims any assertion that the operation of that extradition treaty constitutes waiver of sovereign immunity.

This understanding of the Agreement is consistent with the operation of prior agreements between the Department and the GOI to ensure that extradited persons were not subject to torture. In an internal Department memorandum, a prior agreement regarding other persons subject to extradition was discussed:

> In making this argument, it states that on at least two prior occasions, India failed to honor diplomatic assurances that it would not torture Sikhs extradited to India by United States. In particular, the submission cites the cases of Daha Singh Sandhu and Kamaljit Kaur Sandhu, both of whom were extradited to India in 1997 after the USG had procured assurances from the GOI that they would be afforded protections under the **Indian Constitution and laws** prohibiting torture and protecting persons against torture and degrading and inhuman treatment; the right to counsel; and the right to have counsel, family and representatives of the Indian Human Rights Commission visit them while in custody.

Doc. 63-1, Dec. 9, 2005 Memo, 202, emphasis added. The Department's view was that individuals had to seek recourse under Indian law.

Some indication that the Agreement intended for disputes to be resolved in United States courts is indispensable for finding implied waiver. "Waiver by contract is premised on an agreement by the parties that the United States courts may become involved in disputes arising pursuant to the contract. Where an agreement contemplates adjudication of a dispute by the United States courts, the waiver exception should be applied, regardless of whether the governing law is explicitly identified." Joseph v. Office of the Consulate General of Nigeria, 830 F.2d 1018,

7

1023 (9th Cir. 1987), citations omitted.  While United States law need not be directly referenced, there must be evidence showing the parties' intent to resort to United States courts.  "[C]ourts rarely find that a nation has waived its sovereign immunity without strong evidence that this is what the foreign state intended." Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect, 1996 U.S. App. LEXIS 22068, *15 (9th Cir. Aug. 28, 1996), amended opinion of 89 F.3d 650, quoting Rodriguez v. Transnave Inc., 8 F.3d 284, 287 (5th Cir. 1993).

Generalized statements concerning relief do not waive sovereign immunity in the absence of some tie to the courts of the United States.  In one case, the country of Libya provided a letter which stated "Despite the fact that discussion of the question of compensation is premature, since it would only follow from a civil judgement based on a criminal judgement, Libya guarantees the payment of any compensation that might be incurred by the responsibility of the two suspects who are its nationals in the event that they were unable to pay." Smith v. Socialist People's Libyan Arab Jamahiriya, 101 F.3d 239, 245 (2nd Cir. 1996).  The Second Circuit determined this language did not constitute an implied waiver as it "contains no express or indirect reference to a waiver of sovereign immunity.... If a foreign state undertook to guarantee payment of a judgment entered against its nationals in a United States court, the argument for an implied waiver would be much stronger.  A generalized undertaking to pay the debt of a national, however, does not imply that the guaranteeing state agrees to be sued on such an undertaking in a United States court." Smith v. Socialist People's Libyan Arab Jamahiriya, 101 F.3d 239, 245-46 (2nd Cir. 1996).  In the case at hand, the GOI similarly provided a general guarantee of Plaintiff's humane treatment; there is no implication that the guarantee is to be enforced in United States courts.  Agreeing to abide by the Convention, an international treaty, does not automatically mean agreeing to have United States courts adjudicate compliance with the Convention.  Plaintiff has presented nothing that suggests the involvement of United States courts was contemplated by the GOI or the Department.

Plaintiff's position is that the Agreement implicated United States law through FARRA:

> Mr. Barapind exercised his right under the Convention and FARRA implementing regulations. He submitted evidence in support of his effort to seek protection under the Convention and actively participated in the proceedings prescribed under FARRA's implementing regulations. And in turn, defendants voluntarily agreed to safeguard Mr. Barapind's right under FARRA by agreeing not to subject him to

> torture as a term and condition of his surrender.
>
> Defendants thus voluntarily undertook a legally cognizable duty to Mr. Barapind based on his exercise of his rights under the law of the United States. Specifically, under FARRA's implementing regulations, 22 C.F.R. § 95.3(b), the defendants voluntarily agreed to the condition imposed by the Secretary of State on Mr. Barapind's surrender that defendants would not subject him to treatment that constitutes torture as defined by the Convention. 22 C.F.R. § 95.3(b)
>
> ....
>
> The fact that defendants voluntarily assented to the terms and conditions of Mr. Barapind's surrender pursuant to United States domestic law, as opposed to a commercial contract, does not diminish the force of the agreement. To the contrary, the fact that the agreement was entered pursuant to United States domestic law enhances it. In other words, defendants' voluntary assent under 22 C.F.R. § 95(b) to protect Mr. Barapind's rights under the Convention and FARRA constitutes a more compelling basis for finding an implicit waiver than finding such a waiver under a commercial contract.

Doc. 63, Plaintiff Sur-Reply, 12:7-13:2.  Here, Plaintiff conflates two separate discussions: his communications with the Department in 2005 concerning FARRA standards and the diplomatic notes between the GOI and the Department concerning the Convention.  While much of the material submitted by Plaintiff addressed the legal requirements of FARRA (Doc. 63-1), that material does not govern the duties set out in the Agreement between the GOI and the Department.  The Agreement was not negotiated between Plaintiff and the GOI.  Again, none of the evidence surrounding the Agreement suggests that the GOI bound itself to comply with FARRA.

Plaintiff is a third party beneficiary of the Agreement.  The Seventh Circuit has stated "courts rarely find that a nation has waived its sovereign immunity, particularly with respect to suits brought by third parties, without strong evidence that this is what the foreign state intended." Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370, 377 (7th Cir. 1985).  In his 2005 communications with Department, Plaintiff himself implicitly recognized that he would not be able to enforce the diplomatic assurances in United States courts; his attorney argued that FARRA prohibited his extradition as "Mr. Barapind would have no legal standing to challenge any violations of diplomatic assurances between the United States Government and the Government of India because he is not a party to the agreement.  Further, assurances are not legally binding and so, even the United States would not be able to enforce the provisions.  Because assurances cannot be enforced, they are meaningless, as Daya Singh Sandhu's and Kamaljit Kaur Sandhu's

experiences demonstrate, to protect Mr. Barapind from torture by Indian officials. Diplomatic assurances, thus, cannot protect Mr. Barapind from torture." Doc. 63-1, Application of Kulvir Singh Barapind for Relief Under the Convention Against Torture to Deny His Extradition to the Indian Government, 44. Plaintiff's status as a third party is another factor that weighs against a finding of implied waiver.

## IV. Order

Defendants' motion to dismiss for lack of subject matter jurisdiction due to the assertion of sovereign immunity is GRANTED. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   September 26, 2014

SENIOR DISTRICT JUDGE

10